# COMPASS

## EXCLUSIVE SALES LISTING CONTRACT

1. **Property.**
   Address: **220 Willow Rd, Wallingford, Pa 19086**
   Municipality (City, Borough, Township): **Nether Providence Township**
   County: **Delaware**    School District: **Wlngfrd-Swrthmr**
   Zoning and Present Use: **R10**
   Tax Parcel/Identification Number: **34-00-02972-01**

2. **Seller.**
   Name: **Joseph P Davie**
   Name: **Debra A Davie**
   Name: _____
   Mailing Address: _____
   Phone Number: _____    Alternate Number: _____
   Email Address: **jdavie2869@gmail.com**    **cuddles220ozzy@gmail.com**

3. **Broker.**
   Broker:    Compass Pennsylvania, LLC
   Broker's Licensee: **Lauren Leithead**    License #: **RS278978**
   Broker's Licensee: **Compass RE**    License #: _____
   Office Address: **4 E Montgomery Ave, Ardmore, PA 19003**
   Office Phone Number: **(610)822-3356**    Alternate Number: **(215)694-7590**
   Email Address: **laurenleithead@gmail.com**

4. **Listing Price.** The listing price (the "Listing Price") for the Property is $ **275,000.00**

   (a) Items included in the Listing Price for the Property: _____

   (b) Items currently rented by Seller, and excluded from the sale: _____

   (c) Other items not included in Listing Price for the Property, and excluded from the sale: _____

5. **Term.** This Contract shall commence on the date it has been signed by Seller and Broker ("Effective Date"), and shall expire at 5:00 p.m. (Eastern time), one year following the Effective Date ("Expiration Date"), unless a sale/rental is being negotiated, in which event Broker will continue to represent Seller until either (i) negotiations are terminated without an agreement of sale, or (ii) settlement occurs. Either Seller or Broker can terminate this representation on or after one hundred eighty (180) days from the Effective Date by providing at least 30 days' prior written notice to the other party.

6. **Agency Relationships.** An agency relationship between Broker and Seller cannot be presumed. Seller has the right to be represented by a broker (agency relationship) and may do so by agreeing to the terms of Seller Agency.

   (a) <u>Designated Agency.</u> Broker will designate the above-referenced licensee(s) (collectively, "Licensee") to represent the interests of Seller; and Licensee is the "<u>Designated Agent</u>", who will act exclusively for Seller. If Licensee is also representing a buyer, then Licensee is a Dual Agent (defined herein).

1

Compass Pennsylvania, LLC - Exclusive Sales Listing Contract

Compass - Main Line, 4 E Montgomery Ave Ardmore PA 19003    Phone: (267) 435-8015    Fax:    220 Willow Rd
Lauren Leithead    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

(b) <u>Dual Agency.</u> Seller agrees that Broker/Licensee may also represent one or more buyer(s) of the Property. A broker or licensee is a dual agent ("Dual Agent") when representing both Seller and a buyer in the sale of a property. If Seller consents to Broker/Licensee acting a Dual Agent, Broker/Licensee will take no action that is adverse or detrimental to either party's interest in a transaction. Confidential information obtained within the fiduciary relationship of Designated Agency with Seller will not be disclosed without the prior written consent of Seller. If more than one buyer may seek to purchase Property through Broker/Licensee, it is agreed that Broker/Licensee may represent those buyers whether such representation arises prior to, during, or after the expiration of this Contract. In the event that Broker/Licensee represents multiple buyers seeking to purchase the same property, it is agreed that Broker/Licensee will disclose to each buyer the existence of the other offer(s). However, only at the direction of and with Seller's prior written instruction will Broker/Licensee disclose any material terms of any other offer to any buyer.

☒    **SELLER HEREBY CONSENTS TO THE DESIGNATED AGENCY AND DUAL AGENCY**

7. **Broker's Fee.** The Broker's fee (the "Broker's Fee") is (**check one**) ☒ **six percent (6%),** ☐ **seven percent (7%),** ☐ **eight percent (8%)** of the sale price, and is to be paid by Seller to Broker at the time of settlement. Seller and Broker agree that Broker will pay from Broker's Fee:

   (a) A fee to another broker who represents the buyer (Buyer Agent).    ☒ Yes ☐ No **3.000** % or $ _____
   (b) A fee to another broker who does not represent either Seller or a buyer (Transaction Licensee).    ☐ Yes ☐ No ____ % or $ _____

Broker will not pay a fee to another broker acting as a sub-agent.

In addition to the Broker's Fee, Seller also agrees to pay Broker a flat fee commission of $ **ZERO**, which commission shall be due and owing at the signing of this Contract but payable when the Broker's Fee is payable.

8. **Obligation to Pay Broker's Fee.** Seller will pay the balance of Broker's Fee to Broker if:

   (a) The Property, or any ownership interest in it, is sold or exchanged during the term of this Contract, whether such agreement is brought by Broker, Licensee, Seller or any other person or broker, at the Listed Price or any price acceptable to Seller;

   (b) A ready, willing and able buyer is found, during the term of this Contract, by Broker or by anyone, including Seller. A willing buyer is one who will pay the Listed Price or more, or a price mutually agreed to by such buyer and Seller, for the Property;

   (c) Negotiations that are pending at the Expiration Date or earlier termination of this Contract result in a sale;

   (d) Seller signs an agreement of sale then refuses to sell the Property, or if Seller is unable to sell the Property because of failing to do all the things required of Seller in the agreement of sale;

   (e) The Property or any part thereof is taken by any government for public use, in which case Seller will pay from any money paid by such government; or

   (f) Within six (6) months of the Expiration Date or earlier termination of this Contract, Seller enters into an agreement to sell, exchange, lease or otherwise transfer any aspect of ownership of the Property with a buyer who was introduced to, visited, or negotiated to buy the Property during the term of this Contract, in each instance as a result of the efforts of Broker. Provided the transaction closes, then Broker's Fee is to be paid at settlement.

In the event that Seller is, by agreement or adjudication, entitled to retain some or all of a buyer's deposit in connection with a terminated agreement of sale, exchange, lease or otherwise transfer of any aspect of ownership of the Property, then Seller will pay to Broker either (i) fifty percent (50%) of the retained deposit money, or (ii) Broker's Fee, whichever is less. In the event that Broker is holding said deposit in escrow, then Seller hereby irrevocably authorizes Broker to retain and apply said deposit on account of this obligation prior to any disbursement to Seller.

2

Compass Pennsylvania, LLC - Exclusive Sales Listing Contract
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    **220 Willow Rd**

In the event that subsequent to the termination of Broker's representation of Seller, Seller enters into an agreement to sell, exchange or otherwise transfer ownership of the Property while Seller is party to a bona fide exclusive listing contract with another broker, then Seller will not owe Broker the Broker's Fee except pursuant to Section 8(c) or Section 8(f) above.

9. **Duties of Broker and Seller.**

    (a) Broker is acting as Seller's agent to market the Property and to negotiate with potential buyers. Broker will use reasonable efforts to find a buyer for the Property. Seller will cooperate with Broker and assist in the sale of the Property as reasonably requested by Broker.

    (b) All showings, negotiations, and discussions about the sale of the Property, written or oral, will be communicated by Broker on Seller's behalf. All written or oral inquires that Seller receives or learns about regarding the Property, regardless of the source, will be referred to Broker. All offers to purchase the Property will be made through Broker and/or Licensee. All offers received by Broker and/or Licensee will be presented to Seller unless Seller has already fully executed an agreement of sale. Once Seller enters into an agreement of sale, Broker and/or Licensee is not required to present other offers to Seller. Unless prohibited by Seller, if Broker or Licensee is asked by a buyer or another licensee about the existence of other offers on the Property, Broker will reveal the existence of the other offers and whether they were obtained by Broker or Licensee.

    (c) If the Property is currently rented, a copy of the lease is to be attached to this Contract. Seller will not enter into or renew any lease during the term of this Contract or allow anyone else to occupy the Property.

    (d) Unless exempted by law, Seller will complete, sign and return to Broker a Seller's Property Disclosure Statement (a "Disclosure Statement") before Broker will actively market the Property for sale. Broker and/or Licensee is not responsible for completing the Disclosure Statement or for the accuracy of information contained in the Disclosure Statement; Seller is solely responsible for completing the Disclosure Statement and for the accuracy of the information contained in the Disclosure Statement. Seller will update the Disclosure Statement as necessary throughout the term of this Contract. If Seller fails to disclose known material defects and/or environmental hazards, Seller will indemnify Broker and Licensee from any claims, lawsuits and actions that result from such failure to disclose.

    (e) Seller authorizes Broker and/or Licensee to put a description of the Property in the Multiple Listing Service ("MLS"), Broker's web-site or other electronic medium. Neither Broker nor Licensee shall be responsible for mistakes in any such listing. The final sale price for the Property will be reported to MLS at the time of settlement.

    (f) Seller authorizes Broker and/or Licensee to conduct 'pre-marketing' of the Property approved or requested by Seller (including, without limitation, through Broker's "Compass Coming Soon" program) ahead or outside of listing it on the MLS or with other aggregators, and Seller agrees to execute and deliver to Broker such other documents to facilitate the same, including, but not limited to, an MLS Listing Waiver (a "MLS Waiver").

    (g) Seller agrees to allow Broker and/or Licensee to take interior and exterior photographs of the Property to help market the Property, which photographs remain the property of Broker and/or Licensee. Broker and/or Licensee may make copies of the photographs and include copies of the photographs in the MLS and/or internet. Seller will not hold Broker and/or Licensee responsible in any way for using the photographs to help market the Property. Neither Broker nor Licensee shall be liable for any loss of or damage to the photographs, or any unauthorized use of the photographs by any third party. Any information regarding potential buyers (sign-in sheets, sales lead tracking, etc.) which comes into Broker's or Licensee's possession as a result of this Contract is and will remain the property of Broker and/or Licensee.

    (h) Seller will make the Property available for inspection by brokers, licensees, and any potential buyers they may bring, insurance representatives, mortgage lenders, appraisers, municipal officials, surveyors and inspectors provided that an appointment has been made reasonably in advance of inspection.

    (i) Seller agrees to allow:
    Sale sign:    ☒ Yes  ☐ No        Lock Box:              *Electronic*      ☐ Yes  ☒ No
    Sold sign:    ☐ Yes  ☐ No                               *Key*             ☒ Yes  ☐ No
                                                            *Combination*     ☒ Yes  ☐ No
                                       Key in Broker's Office:                ☐ Yes  ☐ No

    Other: _____

3

Compass Pennsylvania, LLC - Exclusive Sales Listing Contract

10. **Broker's Services to Buyer.** Broker may provide services to a buyer for which Broker may accept a fee. These services may include financing, title insurance, or document preparation. The companies providing the service may be under common control with Broker and the services may be paid for by the buyer. Broker will disclose to Seller if any such fees are to be paid by the buyer.

11. **Seller's Representations.** Seller represents and warrants that (i) Seller, or each person signing this Contract on behalf of Seller, has the full right, power, and authority to execute this Contract as or on behalf of Seller; (ii) neither Seller nor the Property is the subject of a bankruptcy, insolvency, probate, or conservatorship proceeding; (iv) there are no effective, valid, or enforceable option rights, rights of first refusal, rights of first offer, or any other restrictions, impediments, or limitations on Seller's right, ability, and capacity to complete a sale of the Property, and (v) Seller will not enter into another listing contract for the Property with another broker that begins before the Expiration Date or earlier termination of this Contract.

12. **Limitation of Liability.**

    (a) Seller represents and warrants that reasonable and customary homeowner's property and liability insurance coverage are in full force and effect for the Property and will so remain during the term of this Contract. In the event that such coverage is cancelled, Seller will immediately notify Broker thereof in writing.

    (b) Seller agrees that neither Broker nor Licensee is responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Licensee.

    (c) Seller agrees that Broker's and Licensee's total maximum liability to Seller for any claim arising out of Broker's or Licensee's representation of Seller is limited to a refund of commission which Seller has paid or would otherwise owe under this Contract. Seller shall defend, indemnify and hold harmless Broker and/or Licensee from any claims, lawsuits or actions arising out of Broker's and Licensee's representation of Seller including, but not limited to, those arising out of the condition of and/or assessments, fines or taxes on the Property and/or failure to provide disclosure thereof, but not including any claims, lawsuits or actions arising out of Broker's and/or Licensee's negligence or misconduct.

    (d) Seller, Broker and Licensee knowingly, voluntarily, and intentionally waive their present or future rights to: (i) a jury trial in any action to resolve any dispute to which Seller, on the one hand, and Broker and/or Licensee, on the other hand, are adverse to each other arising under or relating to this Contract; and/or (ii) consolidate or transfer any such action with or to another action where any of them might otherwise be entitled to a jury trial.

    (e) Seller and Broker and/or Licensee will submit to mediation all claims, disputes or controversies between Seller and and/or Broker's Licensee that in any way arise from or relate to this Contract and/or and the services, advertising, disclosures, practices and procedures related to the foregoing (a "Claim"). Mediation will be conducted in accordance with the mediation system offered or endorsed by the local Association of REALTORS® (the "Association"). Mediation fees charged by the Association or mediator will be paid by Broker and/or Broker's Licensee. The mediation process must be concluded without resolution before either Seller or Broker may initiate legal proceedings. The statute of limitations related to a Claim will be tolled until fourteen (14) calendar days following the conclusion of the mediation process.

4



Compass Pennsylvania, LLC - Exclusive Sales Listing Contract

13. **Deposit Money.**

    (a) Pursuant to state law, Broker will place all deposit monies (a "Deposit") it receives into an escrow account, although Seller agrees that Broker may wait to deposit any check received as a Deposit until Seller signs the applicable agreement of sale. Broker will only release the Deposit in connection with final settlement, unless prior to final settlement and while the agreement of sale is still in effect Broker receives a written disbursement directive signed by the buyer and Seller.

    (b) In the event that final settlement does not occur, state law does not allow a broker holding a Deposit to determine who is entitled to the Deposit, regardless of the apparent entitlement thereto. If the agreement of sale is terminated for any reason, Broker can only release the Deposit:

    1. If there is no dispute between the buyer and Seller over entitlement to the Deposit;

    2. According to the terms of a written agreement signed by the buyer and Seller directing Broker how to distribute some or all of the Deposit;

    3. According to the terms of a final order of Court;

    4. According to the terms of a prior written agreement between the buyer and Seller that directs the Broker how to distribute the Deposit in the event of an unresolved dispute; or

    5. By paying the Deposit into Court and requesting that the Court decide entitlement thereto.

    Broker shall have no liability if a Deposit is released on any of the grounds set forth above. In the event that Seller joins the Broker and/or Licensee in a lawsuit for the return of the Deposit, Seller will pay all of Broker's reasonable attorney fees and costs incurred in connection with such litigation.

14. **Foreign Investment in Real Property Tax Act of 1980 (FIRPTA).** The disposition of a U.S. real property interest by a foreign person (a "transferor") is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes, but is not limited to, a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (a "transferee") from foreign persons, certain purchasers' agents, and settlement officers are required to withhold 15% (10% for dispositions before February 17, 2016) of the amount realized on the disposition (special rules for foreign corporations). In most cases, the transferee is the withholding agent. If you are the transferee you must find out if the transferor is a foreign person. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax. For cases in which a U.S. business entity such as a corporation or partnership disposes of a U.S. real property interest, the business entity itself is the withholding agent.

15. **Publication of Sale Price.** Seller is aware that the MLS, newspapers, web-sites, and other media may publish the final sale price of the Property, and that such final sale price is a matter of public record beyond the control of Broker and/or Licensee.

16. **Conflict of Interest.** A conflict of interest is when Broker has a financial or personal interest where Broker cannot put the Seller's interest before any other. If Broker or Licensee has a conflict of interest, Broker will notify Seller in a timely manner.

17. **Home Warranties**. A home warranty can help protect you from the cost of a failure in your home's major systems and appliances while your Property is for sale. At settlement, the warranty can be assigned to a buyer in order to continue the protection subject to the terms of the warranty. Licensee can provide you with more detailed information about home warranties upon request.

18. **Broker's Fee and Term of Contract.** The terms and length of the business relationship, the fees and the range of services that Broker will provide are determined as a result of negotiations between Broker and Seller and have not been recommended by the Association.

19. **Assignment.** Seller agrees that Broker may transfer this Contract to another real estate broker if (i) Broker stops doing business; (ii) Broker forms a new real estate business; or (iii) Broker joins its business with another for any other reason. If an assignment occurs, Seller will follow all requirements of this Contract with the new broker. The terms of this Contract shall bind any subsequent owner of the Property should Seller give or transfer the Property or an ownership interest in it, to anyone during the term of this Contract.

5

Compass Pennsylvania, LLC - Exclusive Sales Listing Contract
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        **220 Willow Rd**

20. **Recovery Fund.** Pennsylvania has a Real Estate Recovery Fund to repay any person who has received a final court ruling against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund repays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about such fund, call (717) 783-3658.

21. **Notice to Persons Offering to Solicit or Rent Housing in Pennsylvania**. Federal and State law makes it illegal for a seller, a broker, or anyone to use race, color, religion or religious creed, sex, national origin, handicap or disability (physical or mental), familial status (children under 18 years of age), age (40 or older), use, handling or training of support or guide animals, or the fact of relationship or association with an individual known to have a disability as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale or rental of property.

22. **Entire Contract.** This Contract constitutes the entire agreement between the parties and any prior contracts, whether written or oral, have been merged and integrated into this Contract. All modifications to and/or terminations of this Contract are binding only when in writing and signed by Seller and Broker.

23. **Consumer Notice.** Seller acknowledges that Seller has received and understands the business relationships described in the Consumer Notice adopted by the Pennsylvania Real Estate Commission at 49 Pa. Code §35.336. The duties and definitions of business relationships stated therein, are incorporated here as part of this Contract as though written here in their entirety.

24. **Lead Paint Disclosure.** The Residential Lead-Based Paint Hazard Reduction Act states that a seller of property built before 1978 must give the buyer an EPA pamphlet titled *Protect Your Family From Lead In Your Home*. The seller must also tell the buyer and the broker what the seller knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. The seller must tell the buyer how the seller knows that lead-based paint and/or lead-based paint hazards are on the property, where the lead-based paint and/or lead-based paint hazards are, the condition of the painted surfaces, and any other information the seller knows about lead-based paint and lead-based paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer and records and reports that the seller has or can get about lead-based paint and/or lead-based paint hazards in or around the property being sold, the common areas, or other dwellings in multi-family housing. According to the Residential Lead-Based Paint Hazard Reduction Act, a seller must give a buyer ten (10) days (unless the seller and the buyer agree to a different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based paint hazards done on the property. A buyer may choose not to have a risk assessment or inspection for lead-based paint hazards done. If the buyer chooses not to have the assessment or inspection performed, the buyer must inform the seller in writing of the choice. The Residential Lead-Based Paint Hazard Reduction Act does not require the seller to inspect for lead-based paint hazards or to correct lead-based paint hazards on the property, and does not apply to housing built in 1978 or later.

25. **Special Instructions.** The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any party. Any special conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Control Act.

26. **Additional Terms and Conditions:** _____
_____
_____
_____
_____

*[Remainder of Page Left Intentionally Blank]*

6
Compass Pennsylvania, LLC - Exclusive Sales Listing Contract

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        220 Willow Rd

dotloop signature verification: dtlp.us/dpU8-eN8w-rTem

**IF YOU DO NOT UNDERSTAND ALL OF THE TERMS OF THIS DOCUMENT,
THEN YOU SHOULD SEEK LEGAL ADVICE BEFORE SIGNING IT.**

**ALL SELLERS MUST SIGN THIS CONTRACT.**

| (initials) | |
|---|---|
| dd, 96 | Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336. |
| dd, 96 | Seller has received the Pennsylvania Seller's Property Disclosure form and agrees to complete and return the same to Broker, if required. |
| dd, 90 | Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return the same to Broker in a timely manner, if required. |
| dd, 90 | Seller has received the MLS Waiver and agrees to complete and return the same to Broker in order to enable proper execution of Compass Coming Soon and other pre-marketing activities agreed upon between Broker and Seller. |

SELLER: _____ DATE: 3/31/2023
Joseph P Davie

SELLER: _____ DATE: 3/31/2023
Debra A Davie

SELLER: _____ DATE: _____

ACCEPTED ON BEHALF OF BROKER, COMPASS PENNSYLVANIA, LLC:

Lauren H. Leithead     dotloop verified
                       03/31/23 5:17 PM EDT
                       40J7-XJ8A-XUTK-AOUE     _____ DATE: _____

Designated Licensee **Lauren Leithead**


_____ DATE: _____

Designated Licensee **Compass RE**

7

/ / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / / /

Compass Pennsylvania, LLC - Exclusive Sales Listing Contract